United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA WILLIAMS-HUGHES, | No. C-04-2751 SC |
| Plaintiff, | FINDINGS OF FACT AND <u>CONCLUSIONS OF LAW</u> |
| v. | |
| CALIFORNIA STATE AUTOMOBILE ASSOCIATION d/b/a AAA LIFE INSURANCE COMPANY, | |
| Defendant. | |

I. **INTRODUCTION**

Plaintiff Barbara Williams-Hughes ("Plaintiff") brought this suit against Defendant California State Automobile Association[1] ("Defendant") in California state court. The action focused on Defendant's non-payment of a life insurance claim following a claim for benefits. Plaintiff's First Cause of Action is for Breach of Contract. Plaintiff's Second Cause of Action is for Breach of the Covenant of Good Faith and Fair Dealing. Plaintiff's Third Cause of Action is for Fraudulent Concealment. Defendant removed the matter to this Court pursuant to 28 U.S.C. §

---

[1] According to the Complaint, Defendant is "California State Automobile Association dba AAA Life Insurance Company." Defendant has stated that its correct name is simply "AAA Life Insurance Company." This Court will simply refer to "Defendant."

1441(b), asserting jurisdiction based on diversity of the parties and an amount in controversy over $75,000.[2]  28 U.S.C. § 1332. Following a bench trial which concluded on April 11, 2005, the Court now sets forth these Findings of Fact and Conclusions of Law.

## II.  **FINDINGS OF FACT**

The Court hereby makes the following findings of fact.

Plaintiff purchased a term life insurance policy for her daughter, Dominiqua L. Franklin ("the Insured") on May 6, 2002. The policy had a term of 20 years.  The benefit amount was $95,000.  Plaintiff's Exhibit 1.  On July 16, 2002, the Insured died of a gunshot wound to the head in a homicide.  According to the coroner's report, when she died, the Insured was wearing a black and gray leather jacket.  In the left front pocket of the jacket was a partially smoked cigarette.  In the right front pocket of the jacket was a butane lighter.  Also, in the left front pocket of a sweatshirt that the Insured was also wearing was a book of matches.  Defendant's Exhibit D-516.  Plaintiff filed a claim for benefits on July 17, 2002.

On May 6, 2002, Plaintiff, the Insured and the insurance agent, Zenobia Stanton, ("Agent") together filled out the "Short Form Application for Life Insurance" ("Application").  See

---

[2] At the time of its February 18, 2005 Order denying Defendant's Motion for Summary Judgment, the Court stated that based on the record then before the Court, diversity appeared to exist, notwithstanding the opaque citizenship of Defendant.  At the present time, the Court once again states that based on the record now before it, the Court has no reason to doubt that diversity exists between the parties.

2

1  Plaintiff's Exhibit 1.  The Court finds that Plaintiff, the
2  Insured, and Agent each signed their own names in the proper
3  spaces on the Application.  The Court makes no finding as to who
4  filled out other portions of the Application.
5      The Application included questions about the Insured's
6  nicotine use.  These questions appeared in a separate box on the
7  front face of the form.  Questions included 1) "Does Proposed
8  Insured currently use any nicotine product? [box] Yes [box] No;"
9  2) "If Yes, Indicate type: [box] Cigarettes [box] Patch [box] Gum
10 [box] Cigars/Pipe [box] Chewing Tobacco/Snuff [box] Other;" and 3)
11 "Year last used: _____ or __ Never?"  According to the Insured's
12 form, the first question on current usage was marked "No."  The
13 second question on "type" was left blank.  The third question on
14 last usage was marked "Never."  Id.  The Court makes no finding as
15 to the temporal definition of the phrase "currently use" other
16 than it at least includes the period of time immediately before
17 May 6, 2002.  The Court does find that the response of "Never"
18 with respect to the third question refers inclusively to each form
19 of nicotine mentioned in the second question.
20     The parties dispute whether or not these three nicotine-
21 related questions are ambiguous or not.[3]  The Court makes no
22 finding of fact with respect to that issue.  However, even if the
23 nicotine-related questions were ambiguous, the Court finds that it
24 is immaterial to the enforceability of the contract at hand.  The
25 Court reaches this conclusion because Plaintiff's testimony at her

---

[3] After the "If Yes ..." question, there was no "If no ..." question; rather, the form simply asked "Year last used ..."

3

1  February 11, 2005 deposition, entered into the record during
2  trial, demonstrates that Plaintiff and Insured understood the
3  nicotine usage questions unambiguously.  Plaintiff's testimony was
4  as follows:
5     [Question] "Is it fair to say, Ms. Williams, that you
       don't recall exactly what [the insurance agent] Ms.
6      Stanton asked in connection with the use of tobacco
       products?"
7
       [Answer] "No. That was not how it went.  She said,
8      'You don't smoke?" and [the insured] Dominiqua
       answered in reply, 'No.'  Then she goes, 'You ain't
9      never smoked, have you?' and then she goes, 'No.' and
       then she continued.  Something like that happened."
10
       [Question] "So, Ms. Stanton asked if she has never
11     smoked and Dominiqua said 'Yes, I have never
       smoked.'"
12
       [Answer] "Yeah."
13
       [Question] "And so she marked 'Never?'"
14
       [Answer] "I think. I think that's how it went.  I'm
15     not sure.  I don't want to say -- I can't swear to
       that so I don't know.  I don't remember off the top
16     of my head how it went exactly."
17     [Question] "But that's your best recollection today?"
18     [Answer] "That's my -- Yes."
19    Testimony of Barbara Williams-Hughes at 55-56.  While
20 Plaintiff ends her response to this line of questioning in
21 somewhat guarded terms, she clearly stated that her best
22 recollection at the time of her deposition was that the Agent
23 asked her daughter about past cigarette usage and her daughter
24 answered in the negative.  At the time of trial, Plaintiff made no
25 ///
26 ///
27 ///
28

4

objection to the entering of this testimony into the record.[4] Therefore, the Court finds that regardless of whether or not the Application's questions on nicotine usage are ambiguous, oral questioning at the time the Application was filled out was not ambiguous. The Court also finds that when asked about past cigarette usage at the time of her application for coverage, the Insured answered "Never" and "No."

Also on the Application signed by the Insured and Plaintiff was a section titled "Representations, Acknowledgement and Authorization." The signatures of both the Insured and the Plaintiff appeared directly below this section. Statements in this section included, "The answers recorded in Part 1 and Part 2 required for this application are, to the best of my knowledge and belief, true and complete and correctly recorded." Plaintiff's Exhibit 1. Furthermore, the Court finds that regardless of whether or not Defendant explicitly informed Plaintiff about the two-year contestability period for new policyholders, this section authorizes Defendant to determine eligibility for life insurance by accessing the Insured's medical records for up to 30 months. Based on this section and the signatures below it, the Court finds that Plaintiff and the Insured were aware that for a period of

---

[4] Prior to trial, Plaintiff did request that her deposition testimony be "corrected." Plaintiff's proposed corrections would completely reverse her testimony given at deposition. Defendant's Motion in Limine to Preclude Plaintiff from Introducing Evidence Based on Changes Made to Her Deposition Testimony, Exhibit A. Corrections to Depositions can only be made for "corrective, and not contradictory, changes." Hambleton Bros. Lumber Co. v. Balkin Enters., 397 F.3d 1217, 1226 (9th Cir. 2005). Therefore, the Court grants Defendant's Motion in Limine to preclude these proposed changes to Plaintiff's deposition testimony.

time after applying for insurance, the Insurer could contest a claim based on investigation of the Insured's medical records. Whether this period of time was two years or 30 months, it certainly extended beyond the date of the Insured's death.

Based on the Insured's medical records submitted at trial, the Court finds that the Insured was either an on-again-off-again or a full-time smoker from November 7, 1994 to June 20, 2001. The medical records contain the following:

- November 7, 1994, "smoker" box checked by medical provider.
- December 14, 1994, "non-smoker" indicated by medical provider.
- May 8, 1996, "no-smoker" indicated by medical provider.
- January 2, 1997, "smoker" box checked by medical provider.
- February 4, 1997, "smoker 4 cigs/day" and "Tobacco use - discussed cessation" written by medical provider.
- July 22, 1997, "non-smoker" indicated by medical provider.
- October 9, 1997, "tobacco use" followed by "yes" box checked by medical provider.
- December 8, 1997, "non-smoker" indicated by medical provider.
- March 22, 1998, "smoker" box checked by medical provider.
- September 29, 1998, "non-smoker" check crossed out and "current smoker" checked by medical provider.
- October 9, 1998, "non-smoker" indicated by medical provider.
- March 20, 2000, "current smoker" checked by medical provider.
- June 20, 2001, Insured answered "yes" to the question "Do you smoke?" on a health questionnaire attached to her medical record.

6

Defendants Exhibits D-501-D-509; Plaintiff's Exhibits 19-23. The Court makes no finding of fact as to whether the Insured smoked subsequent to June 20, 2001. However, the Court notes the coroner's finding of a partially smoked cigarette, a lighter, and matches on the Insured's body at the time of her death. Even though this fact is not relevant to whether or not the Insured smoked at the time of her application for life insurance, it indicates that she was an on-again-off-again smoker.

### III. CONCLUSIONS OF LAW

Under California law, "material misrepresentations or concealments in an application for insurance are grounds for rescission of the policy." Old Line Life Ins. Co. v. Superior Court, 281 Cal. Rptr. 15, 17 (Cal. Ct. App. 1991). Section 331 of the California Insurance Code states, "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance." Section 359 of the Code states, "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false." Furthermore, "[t]he most generally accepted test of materiality is whether or not the matter misstated could reasonably be considered material in affecting the insurer's decision as to whether or not to enter into the contract, in estimating the degree or character of the risk, or in fixing the premium rate thereon." Old Line, 281 Cal. Rptr. at 18 (internal quotations and citations omitted). California courts hold that representations concerning nicotine usage are material. Id. at 19 ("[W]e conclude that California law

7

1  allows an insurance company to rescind a life insurance policy
2  based upon misrepresentations as to the insured's smoking
3  history.").

4  Also, under California law, when an insurance company seeks
5  rescission of an insurance contract due to misrepresentations,
6  "The burden is on the insurer to prove that the applicant breached
7  the duty to disclose material facts." Miller v. Republic Nat'l
8  Life Ins. Co., 789 F.2d 1336, 1340 (9th Cir. 1986) *citing to* Olson
9  v. Standard Marine Insurance Co., 240 P.2d 379, 384 (Cal. Ct. App.
10 1952).

11 Here, the Insured informed Defendant that she had never
12 smoked cigarettes.  Looking to the testimony and exhibits in the
13 record, she informed Defendant both orally and in writing.  Based
14 on the Insured's medical records, the Court finds that this was a
15 material misrepresentation under Old Line.  In sum, Defendant has
16 met the burden of proving that the Insured breached the duty to
17 disclose material facts.  Therefore, Defendant may rescind the
18 contract.

19 Looking to each of Plaintiff's Causes of Action, the Court
20 holds that Plaintiff has not shown a right to recovery under any
21 of the causes of action.  On the First Cause of Action, for Breach
22 of Contract, Plaintiff has not shown a breach because Defendant,
23 as described above, has a right to rescind the contract.  On the
24 Second and Third Causes of Action, for Breach of the Covenant of
25 Good Faith and Fair Dealing and for Fraudulent Concealment,
26 Plaintiff has not shown a breach because, among other reasons,
27 Plaintiff's oral testimony demonstrates that Plaintiff was not
28

8

injured by any potential ambiguities in the contract.

**IV.  CONCLUSION**

In light of the above Findings of Fact and Conclusions of Law, the Court finds that the Insured materially misrepresented her smoking history on her life insurance application.  Material misrepresentations regarding the Insured's smoking history were of paramount importance to the Insurer in deciding whether or not to enter the contract with Insured, in understanding the degree and character of the risk of covering the Insured, and in fixing the premium rate for the Insured.  Regardless of who filled out the relevant questions on the application form, both the Insured and Plaintiff signed and acknowledged the application form.  With regard to the question of whether the application form was facially ambiguous, Plaintiff's oral testimony demonstrates that there were no ambiguities at the time of application.  Therefore, the Court hereby finds for Defendant on all Causes of Action.

IT IS SO ORDERED.

Dated: April  20 , 2005

/s/ Samuel Conti

UNITED STATES DISTRICT JUDGE